IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN DELIA,                          )
                                     )
            Plaintiff,               )      Civil  No. 05-6123-HO
                                     )
                                     )
                    v.               )      ORDER
                                     )
BENTON COUNTY,                       )
                                     )
            Defendant.               )
_____)

Defendant Benton County interviewed plaintiff John Delia in May and June of 2004 for the position of law enforcement lieutenant. After a lengthy application process, the Benton County Sheriff extended plaintiff a conditional job offer contingent on his passing a background investigation, medical examination and psychological testing. The Sheriff revoked the job offer after the Sheriff's Office purportedly discovered that plaintiff was not suited for the job based on performance issues in a similar prior

position.   Plaintiff alleged that defendant refused to hire him based on various unlawful discriminatory grounds.   After a motion for summary judgment and rulings at the pretrial conference, the case was pared down to a single claim for violation of 42 U.S.C. § 1983.

As noted in this court's order regarding defendant's motion for summary judgment, there were issues of fact as to whether the decisionmaker with respect to the challenged act, Sheriff James Swinyard, was a final policymaker for purposes of imposing section 1983 liability on the sole defendant in this case, Benton County.

Congress did not intend local governments to be held liable under section 1983 unless action pursuant to official government policy of some nature caused a constitutional tort." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978).   A local government may be responsible for a single decision by government policymakers under appropriate circumstances.   Where a decision to adopt a particular course of action is properly made by that government's authorized decisionmakers, it represents an act of official government "policy" as that term is commonly understood.   Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).   Where action is directed by those who establish governmental policy, the local government is equally responsible whether that action is to be taken only once or to be taken repeatedly.   See, id.   However, not every decision by governmental

2 - ORDER

officers automatically subjects the government to section 1983 liability. Government liability attaches only where the decisionmaker possesses final authority to establish government policy with respect to the action ordered. Id. The fact that a particular official, even a policymaking official, has discretion in the exercise of particular functions does not, without more, give rise to government liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the County can be held liable. See, id. at 482-83.

> "As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury. Reviewing the relevant legal materials, including state and local positive law, as well as " 'custom or usage' having the force of law," Praprotnik, supra, at 124, n. 1, 108 S.Ct., at 924, n. 1, the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue. Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether their decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur, see Monell, 436 U.S., at 661, n. 2, 98 S.Ct., at 2020, n. 2, or by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity. See Pembaur, supra, at 485-487, 106 S.Ct., at 1301-1302 (WHITE, J, concurring)."

Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989).

In response to the summary judgment motion, plaintiff

acknowledged that where a county sheriff has discretion to hire and fire employees without also being the county official responsible for establishing county policy, a decision respecting employment would not give rise to county liability.  Nonetheless, plaintiff raised issues of fact as to whether the County Commissioners delegated  power to establish final employment policy because Swinyard was solely responsible for the decision to hire an applicant for the position of lieutenant or fire the lieutenant after he had been employed.  At the time, neither party provided detail as to state law respecting the Sheriff's authority or the County's power with respect to personnel matters.  Accordingly, the court allowed plaintiff to proceed to trial so that the record could be developed in this regard.

For purposes of <u>Monell</u> liability, the term "policy" includes within its definition not only policy in the ordinary sense of a rule or practice applicable in many situations.  It also includes "a course of action tailored to a particular situation and not intended to control decisions in later situations." <u>Pembaur</u>, 475 U.S. at 481. When determining whether an individual has final policymaking authority, courts ask whether he has authority "in a particular area, or on a particular issue." <u>McMillian v. Monroe County</u>, 520 U.S. 781, 785 (1997).  For a person to be a final policymaker, he must be in a position of authority such that a final decision by that person may appropriately be attributed to

the County.   In this case, the single decision not to hire can constitute "policy" for purposes of <u>Monell</u>.  The issue is whether former Sheriff Swinyard may appropriately be considered a final policymaker with respect to that decision.

To determine whether the decisionmaker is a final policymaker, the court looks first to state law. <u>Jett</u>, 491 U.S. at 737.  A Benton County employee may act as a de facto policymaker under section 1983 without explicit authority under state law, but courts are ordinarily "not justified in assuming that [county] policymaking authority lies somewhere else than where the applicable law purports to put it." <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 126 (1988).  Depending on the circumstances, however, courts may also look to the way a local government entity operates in practice. <u>Jett</u>, 491 U.S. at 737 (trial judge must identify official policymakers based on "state and local positive law, as well as custom or usage having the force of law") (citation and quotation marks omitted).   While "[a]uthority to make [county] policy may be granted directly by a legislative enactment," it may also be "delegated by an official who possesses such authority." <u>Pembaur</u> 475 U.S. at 483.

At trial, plaintiff elicited testimony from current Benton County Sheriff and former Under Sheriff Diana Simpson and former Sheriff James Swinyard.  Simpson testified that requests for permission to post for recruitment generally had to go through

Benton County human resources.  Simpson stated that for positions like the one plaintiff applied for specifically, the Sheriff's Department had to get permission from the Board of Commissioners.

Simpson also stated that the Sheriff's Department coordinates with human resources for the recruitment process.  Simpson additionally testified that human resources can make changes to the advertisement for new hires to make sure it complies with personnel polices and state law.  For instance, Simpson stated, minimum qualifications are set in conjunction with human resources.

Simpson related that human resources makes sure a given candidate meets qualifications initially and then makes referrals to the Sheriff's Department, where the Sheriff selects candidates for an assessment center.  Simpson did note that the Sheriff implements the process for assessment, conducts the background check, makes the job offer, and ultimately makes the decision on who will be hired.

Simpson also noted that the Board of Commissioners establishes the Sheriff's Department and has some ability to assume control over the Sheriff's Department in the event of misconduct.

Swinyard testified that he used county personnel policies for hiring Lieutenants.  Although, Swinyard testified, he had the final authority to hire and fire subordinates, he operated under certain constraints such as firing for cause only.  Swinyard noted that his management boundaries were set pursuant to county policies.

6 - ORDER

Swinyard testified that he refined the hiring procedures within the existing county policies and those polices were reviewed by human resources and county counsel. Swinyard stated that he had to comply with county policies and noted that he had to get approval even to post for a position.

In arguing the issue, plaintiff stated, without specific cite, that the Oregon Constitution and the Oregon statutes gives plenary power to the Sheriff and that the Sheriff is the chief executive officer of the county. Plaintiff also argues agency principals in asserting that the Sheriff also had at least apparent authority to set hiring and firing policy.

While the court agrees that the Benton County Sheriff does have certain policymaking authority, he does not have policymaking authority with respect to all personnel matters, particularly when it comes to hiring. Plaintiff certainly demonstrated that the Sheriff had administrative decisionmaking authority with respect to the decision not to hire plaintiff. However, plaintiff did not rebut the evidence that the Sheriff exercises this power under constraints imposed by the Benton County Board of Commissioners, Benton County Human Resources and Benton County Counsel.

A Sheriff may have policymaking authority in certain areas and not others. See, e.g., Pembaur, 475 U.S. at 483 ("[T]he County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county

employment policy.  If this were the case, the Sheriff's decisions
respecting employment would not give rise to municipal liability,
although  similar  decisions  with  respect  to  law  enforcement
practices, over which the Sheriff is the official policymaker,
would give rise to municipal liability"); Davis v. Mason County,
927 F.2d 1473, 1481 (9th Cir. 1991) (a Sheriff can be the official
policymaker  regarding  law  enforcement  practices  without  having
final authority over all of its employees).

Plaintiff  apparently  meant  to  cite  ORS § 206.010  for  the
source  of  the  Sheriff's  policymaking  authority.   That  Statute
provides:

> The  sheriff  is  the  chief  executive  officer  and
> conservator of the peace of the county. In the execution
> of the office of sheriff, it is the sheriff's duty to:
>
> (1) Arrest and commit to prison all persons
> who break the peace, or attempt to break it,
> and all persons guilty of public offenses.
>
> (2) Defend the county against those who, by
> riot or otherwise, endanger the public peace
> or safety.
>
> (3) Execute the process and orders of the
> courts of justice or of judicial officers,
> when delivered to the sheriff for that
> purpose, according to law.
>
> (4) Execute all warrants delivered to the
> sheriff for that purpose by other public
> officers, according to law.
>
> (5) Attend, upon call, the Supreme Court,
> Court of Appeals, Oregon Tax Court, circuit
> court, justice court or county court held
> within the county, and to obey its lawful
> orders or directions.

That statute does not extend official policymaking power with respect to hiring and firing subordinates.  The only statute that the court could find respecting the personnel polices entrusted to the sheriff is ORS § 206.210:

> Notwithstanding the provisions of ORS 241.016 to 241.990 or any other county civil service law or regulation, the sheriff may organize the work of the office of the sheriff so that:
>
> > (1) The various duties required of the office may be assigned to appropriate departments and divisions to be performed by persons experienced and qualified for such respective kinds of work.
> >
> > (2) The duties of the various assistants, officers and deputies of the sheriff are coordinated so that, when not engaged in a particular duty specified or directed to be done and not then requiring attention, such persons shall perform the other duties required of the office and then required to be done.
> >
> > (3) The cooperation among assistants, officers, deputies and employees in the departments and divisions may be secured for the purposes of avoiding duplication of time and effort.

Again, the statute does not vest policymaking authority respecting hiring and firing decisions and, to that extent, Chapter 241 vests this power in the Board of Commissioners.  See, e.g., ORS § 241.210:

> All positions subject to civil service in the county shall be created by the board of county commissioners and the board is authorized to fix the compensation of all employees employed therein. In the creation of each position subject to civil service, and in determining the amount of compensation thereof, the board shall give due

consideration to the recommendation of the civil service commission and the appointing power of the department under which the position is created.

Plaintiff provides no authority demonstrating that the Sheriff has to power to, for instance, implement hiring procedures in conflict with County personnel policy. As noted above, the Sheriff merely enjoys decisionmaking authority within parameters set by the Board of Commissioners and plaintiff has not produced any evidence that the County, by custom or usage, has delegated such authority to the Sheriff.

At trial, plaintiff argued that if the Sheriff is not found to be a policymaker for purposes of County liability, plaintiff is left without recourse for hiring decisions that violate the constitution, especially in light of the dismissal of his other claims. However, a County could still be liable, for instance, if it ratifies decisions that violate the Constitution. However, plaintiff has not presented any evidence that the County has ratified hiring practices in contravention of First Amendment rights. Moreover, plaintiff arguably could have sued the Sheriff in his individual capacity, but chose not to pursue such an action. Plaintiff cannot seek to hold Benton County liable for alleged constitutional torts that did not result from official County policy. Accordingly, there are no issues for the jury to determine and this action is dismissed.

<u>CONCLUSION</u>

For the reasons stated above, plaintiff fails to present a triable issue for the jury with respect to his section 1983 claim. This action is dismissed.

DATED this <u>  21st  </u> day of March, 2007.

<u>   s/ Michael R. Hogan     </u>
United States District Judge